953 So.2d 831 (2007)
La Shae JOHNSON
v.
WALMART.
No. 06-CA-907.
Court of Appeal of Louisiana, Fifth Circuit.
February 27, 2007.
*832 Joseph G. Albe, Attorney at Law, New Orleans, Louisiana, for Plaintiff/Appellant.
Scott F. Davis, Attorney at Law, Metairie, Louisiana, for Defendant/Appellee.
Panel composed of Judges SUSAN M. CHEHARDY, FREDERICKA HOMBERG WICKER, and GREG G. GUIDRY.
GREG G. GUIDRY, Judge.
Plaintiff, La Shae Johnson, appeals from the workers' compensation judgment dismissing her claim against her employer, Wal-Mart Stores, Inc. For the reasons which follow, we affirm.
Plaintiff was hired by Wal-Mart on October 26, 2001, to work as a loss prevention officer. This job included surveillance of the store for shoplifters as well as the apprehension and detention of shoplifters. The Plaintiff alleges that she suffered work related injuries during the course and scope of her employment, while attempting to apprehend shoplifters on October 9, 2002, and February 5, 2003. As a result, she contends that she is disabled and entitled to supplemental earnings benefits (SEBs), medical expenses, attorney fees, and penalties. She argues that the trial court erred in finding that her claim had no merit and dismissing it.
The Defendant argues to the contrary that Plaintiff did not carry her burden of proving disability causally related to the work accidents and, therefore, the trial court was correct in finding that her claim lacked merit. More particularly, the Defendant points out that Plaintiff was provided light duty work when medically restricted but was thereafter released to return to her regular duties. The evidence established that Plaintiff was injured prior to her employment and suffered no further disability from the alleged work accidents. She simply did not meet her burden of proof.
The trial court agreed with the defense and found:
From all of the above, the Court has concluded that Claimant was not a credible witness, that she was not in good health prior to her employment at Wal-Mart, that she was advised of her right to treat with a physician of her own choosing and that she has presented no competent medical evidence to confirm her allegations of disability. Additionally, other witnesses and other evidence had discredited or cast serious doubt upon Johnson's allegations of injury and ongoing disability.
In a workers' compensation case, it is the claimant's burden to prove a work-related accident and a resulting injury by a preponderance of the evidence. Ratliff v. Brice Bldg. Co., 03-624 (La.App. 5th Cir.11/12/03), 861 So.2d 613. While the court may view the circumstances from the perspective of the worker, the claimant's burden of proof is not relaxed. Shaw v. Arc of St. Charles, 00-1193 (La.App. 5th Cir.11/28/00), 776 So.2d 542. The claimant's testimony alone may be sufficient to *833 satisfy this burden of proof, as long as there is no other evidence that discredits or casts serious doubt upon his version of the incident, and his testimony is corroborated by circumstances following the alleged accident. Ratliff, supra; Head v. Winn-Dixie, Inc., 01-467 (La.App. 5th Cir.10/17/01), 800 So.2d 992; Shaw, supra. Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses, or friends. Corroboration may also be provided by medical evidence. Ratliff, supra; Shaw, supra.
It is well settled that an appellate court may not set aside the factual findings of a workers' compensation judge in the absence of manifest error or unless they are clearly wrong. Chaisson v. Cajun Bag & Supply Co., 97-1225, p. 13 (La.3/4/98), 708 So.2d 375, 380; Barbarin v. TLC Home Health, 02-1054, p. 3 (La.App. 5th Cir.4/29/03), 845 So.2d 1199, 1202; Campbell v. Gootee Const. Co., 99-913, p. 9 (La.App. 5th Cir.1/12/00), 756 So.2d 449, 453. Under the manifest error standard of review, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State through DOTD, 617 So.2d 880 (La. 1993). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra; Rosell, supra.
Upon review, we find that the judgment reached by the workers' compensation judge was reasonable and supported by the record before us. The record indicates that following the first incident on October 9, 2002, the Plaintiff was treated by Dr. Mark Juneau. Although Dr. Juneau was recommended through the employer, the record supports the trial court's finding that Plaintiff was informed that she could select a physician of her choice. She informed her employer that she was satisfied with Dr. Juneau's treatment.
On January 10, 2003, Plaintiff returned to Dr. Juneau complaining of pain. Dr. Juneau concluded that he could find no objective evidence of spasm. Consistent in Dr. Juneau's reports is the finding that Plaintiff underwent cervical fusion several years earlier. She suffers with occasional pain from that. After reviewing results from an MRI, he found that she was back to her pre-work injury condition, but this did entail some pain from the non-work related spinal fusion years earlier. Dr. Juneau released Plaintiff to regular duty work. On February 4, 2003, when Plaintiff again returned to Dr. Juneau with complaints of pain, Plaintiff was again advised by Dr. Juneau that she was capable of working at her regular duties. He acknowledged that because of her condition, having had a spinal fusion years earlier, she would suffer some pain and discomfort and wrestling with shoplifters would likely cause her some back pain. However, she had reached her pre-work injury condition. During this period, from October 9, 2002, through February 4, 2003, Plaintiff was provided light duty work and all of her medical treatment was approved and paid for by the Defendant.
On February 5, 2003, on her first day back to her regular duties, Plaintiff contends that she was again injured while *834 trying to apprehend a shoplifter. She returned to Dr. Juneau on February 11, 2003. Dr. Juneau acknowledged in his report of February 25, 2003, that Plaintiff had been assigned a sedentary position and he found no medical reason why she could not do this light duty work. Plaintiff was medically released to return to work. On March 31, 2003, Dr. Juneau reported that Plaintiff did not require any further treatment.
On July 7, 2003, still reporting pain, Plaintiff sought treatment with a new physician, Dr. Leslie Hightower. His impression, following an examination, was that the Plaintiff's symptoms suggested "median neuropathy" and her headaches were "likely cervicogenic in nature." She ultimately underwent another MRI of the cervical and lumbar spine on August 18, 2004.
The defense produced three separate reports from an expert, Dr. Robert Applebaum. The first report, dated June 1, 2004, followed an interview and examination of the Plaintiff. It was noted that the Plaintiff was complaining of pain in her neck, left shoulder, and lumbar area, as well as headaches. Following the interview and examination, it was the physician's impression that at that time the patient showed equivocal mechanical and neurological findings which would suggest exaggeration of symptoms and possible malingering. A second report was submitted, dated August 30, 2004, following review by Dr. Applebaum of an MRI performed on the Plaintiff on January 8, 2003, prior to the second work incident. Dr. Applebaum gave the opinion that the Plaintiff "does not have disease or damage involving the spinal cord or nerve roots and there is no need for further neurosurgical diagnostic or therapeutic procedures. I feel she could return to any occupation for which she is otherwise qualified." Thereafter, in a follow-up report on October 27, 2004, Dr. Applebaum found that the MRI of August 18, 2004, was similar to the MRI from January 8, 2003, and again gave the opinion that the Plaintiff did not have disease or damage and could return to any occupation for which she was qualified.
Plaintiff sought treatment with Dr. Simmons in December 2003, who diagnosed her with chronic neck and back pain, spasms, and some numbness. He recommended that she be on full disability and that she see a neurosurgeon, particularly Dr. Kenneth Vogel, who had performed her fusion surgery.
Plaintiff had earlier consulted Dr. Vogel and got a note from him dated June 17, 2003, stating:
Pt [patient] is post op [operative] lumbar interbody fusion. She remains disabled for gainful employment as per previous report. This remains unchanged.
This note tracks a similar note by Dr. Vogel dated May 31, 2001, before Plaintiff worked for Wal-Mart stating:
To whom it may concern, the above pt [patient] is post op [operative] disc excision and then L5 fusion. She finds it painful to work in her current capacity. She will be eval [evaluated] in follow up. She is disabled for gainful employment at this time.
Dr. Vogel's post Wal-Mart injury note, tracking the pre-injury note clearly indicates that Plaintiff's problems existed before she ever worked for Wal-Mart, and continued unchanged after the alleged work incidents.
Finally, after Wal-Mart approved a neurology consult, Dr. Stefan Pribril noted in his June 8, 2004, report that the Plaintiff was complaining of pain in her lower back, left shoulder, left arm, and left leg, with numbness in her left arm and leg. He further noted that she was 29 years old, morbidly obese, and had sustained several *835 injuries starting as long ago as 1996. In his September 16, 2004, report, Dr. Pribril indicated that he agreed with the findings of Dr. Applebaum. And in his December 12, 2004, report he found there was no evidence of a need for surgery. She was discharged and found not to be in need of further neurosurgical follow-up.
Upon considering the applicable law and record evidence in this case, we cannot say the findings by the workers' compensation judge were manifestly erroneous or that he was clearly wrong in his factual conclusions, finding that the Plaintiff did not meet her burden of proving disability causally related to her work accidents. Medical reports from Drs. Juneau, Applebaum, Vogel, and Pribril all agreed essentially that the Plaintiff was at maximum recovery insofar as she was in the same condition she was in before she started working at Wal-Mart which was a pained, perhaps at times, disabling condition due to the spinal fusion.
While the Plaintiff produced some evidence that she remains in pain and has lumbar spasms, headaches, and numbness, through the reports of Drs. Hightower and Simmons, the overwhelming evidence supports the Office of Workers' Compensation findings that the Plaintiff has a serious back condition from the spinal fusion she underwent several years ago which causes her continued pain, discomfort, and disability. Further, the evidence established that her condition was not made worse by the work accidents that allegedly occurred at Wal-Mart nor was her current disability caused by those events.
Similarly, her argument that she was wrongfully denied SEBs between her first and second Wal-Mart accident lacks merit. The Plaintiff provided evidence that she worked less hours during some of those pay periods than she normally worked before the accident. She testified that she missed work sometimes because of pain. However, Dr. Juneau had released the Plaintiff to light duty work during that time period. Light duty work was provided for her by Wal-Mart. In May 2001 Dr. Vogel indicated that the Plaintiff found it painful to work. Dr. Vogel's June 2003 note indicated her condition remained unchanged. Thus, we find no error in the workers' compensation judge's implicit finding that the Plaintiff did not meet her burden of proving that the reason she worked less hours during that time was causally related to the Wal-Mart accident.
As stated above, it is well settled that, where there is a conflict in the evidence, we cannot conclude that the factfinder's reasonable evaluation of credibility and reasonable inferences of fact are manifestly erroneous or clearly wrong. The findings by the Office of Workers' Compensation judge, that the Plaintiff was not credible, that she was not in good health prior to her employment at Wal-Mart, that she was advised of her right to choose her physician and chose to continue with Dr. Juneau, and that she did not meet her burden of proving ongoing disability causally related to her work accidents, are amply supported by the record. Therefore, we find no manifest error in the judgment.
Accordingly, we affirm the workers' compensation judgment rendered in favor of Wal-Mart Stores, Inc. and against La Shae Johnson, dismissing her claims against Wal-Mart with prejudice.
AFFIRMED.