990 So.2d 34 (2008)
Larry ADAMS
v.
SYSCO FOOD SERVICE OF NEW ORLEANS.
No. 07-CA-935.
Court of Appeal of Louisiana, Fifth Circuit.
June 30, 2008.
*36 Jesse R. Elliott, New Orleans, Louisiana, for Plaintiff/Appellee, Larry J. Adams.
Nathan L. Schrantz, Daniel, Coker, Horton and Bell, Gulfport, Mississippi, for Defendant/Appellant, Sysco Food Services of New Orleans, LLC.
Panel composed of Judges SUSAN M. CHEHARDY, FREDERICKA HOMBERG WICKER, and GREG G. GUIDRY.
SUSAN M. CHEHARDY, Judge.
This is a workers' compensation case in which the employer appeals a judgment in favor of the claimant and the claimant answers the appeal. We amend to award additional attorney's fees to the claimant for his counsel's work on this appeal, and as amended we affirm the judgment.

FACTS
Larry Adams, the claimant, began working for SYSCO Food Service of New Orleans in July 1996 and soon became a delivery truck driver. On January 19, 2004, by letter from his attorney, Adams notified SYSCO's third-party workers' compensation administrator, Gallagher Bassett Services, that Adams had been diagnosed with work-related carpal tunnel syndrome and that he was injured in the course and scope of his employment. At that time Adams was out on sick leave due to an ankle injury.
On March 10, 2004 Adams attempted to return to work from sick leave, but was not allowed to work. He was told that SYSCO considered him to have resigned.
On March 22, 2004, Adams filed a disputed claim for compensation. He listed the date of injury as December 22, 2003, the injuries as carpal tunnel syndrome in both wrists, and described the accident as follows: "Claimant states he drives for long periods of time and his wrists are in a flexed position He also transport[s] products which requires repetitive use of his hands and wrists. Claimant states that those activities lead to persistent paresthesias." He stated that SYSCO had refused to authorize carpal tunnel surgery.
On April 19, 2004, Adams filed a second disputed claim for compensation, for injury to his right foot and ankle, listing the date of injury as December 5, 2003, and describing the incident as follows:
While using a 3 point contact to get out of vehicle, claimant planted his right foot on a box which he thought was on the ground when exiting his work vehicle. Claimant twisted his right foot and it started hurting. Claimant then tried to drive the truck back to work, but someone else had to finish his route.
SYSCO filed an exception of prescription. SYSCO asserted the claims for bilateral carpal tunnel syndrome had prescribed because Adams had been undergoing *37 treatment by Dr. Eric George for pain in both wrists since November 2002, at which time he informed the doctor that he had been suffering pain in both wrists for approximately ten months and that he believed the problem was work-related.
The parties filed a Joint Factual Stipulation into the record, in which they agreed to the following facts:
1. Larry Adams began employment by SYSCO Foods of New Orleans, LLC in July, 1996. He soon became a delivery truck driver which required him to drive a truck for long periods of time with his wrists in the flexed position. Larry Adams would transport products which required repetitive use of his hands and wrists.
2. Larry Adams treated with Dr. Lisa Hawk, his treating internist, on October 27, 2002 complaining of right wrist pain and popping. He complained to her of experiencing intermittent pain in the right wrist for the past two years. He denied paresthesias and weakness.
3. Larry Adams was initially examined by Dr. Eric George, a hand specialist, on November 18, 2002. At that time he complained of bilateral wrist pain he had experienced for approximately ten months. Larry Adams said he believed his wrist pain may be work related. When asked if he had been injured, Larry Adams told Dr. George that his pain was not from an injury. Larry Adams was diagnosed with medial epicondylitis of the left elbow and tenosynovitis inflammatory changes to the right wrist.
4. On February 6, 2003, an MRI of Larry Adams' right wrist ordered by Dr. George revealed no significant abnormalities.
5. On February 21, 2003, Dr. George opined that Larry Adams' condition was consistent with tenosynovitis.
6. On March 21, 2003, Dr. George opined that Larry Adams may be suffering from one of the early arthrides, which would include rheumatoid arthritis, systemic lupus etc.
7. On June 20, 2003, Dr. George ruled out rheumatoid arthritis and opined that Larry Adams was dealing with purely an inflammatory condition.
8. On October 3, 2003, an electrodiagnostic test revealed for the first time that Larry Adams may be suffering from bilateral carpal tunnel syndrome.
9. On October 17, 2003, Dr. George opined that Larry Adams may be suffering from a moderate carpal tunnel syndrome.
10. On November 7, 2003, Dr. George recommended decompression of Larry Adams' bilateral carpal tunnel syndrome.
11. On December 11, 2003, Dr. George opined that Larry Adams' bilateral carpal tunnel syndrome was work-related.
12. Larry Adams presented a claim to SYSCO to pay for Bilateral Carpal Tunnel decompression surgery on December 29, 2003.
13. The surgery request was denied on March 20, 2004 as controverted following an examination of Dr. Eric George's medical file by SYSCO and its Third Party Administrator for workers' compensation claims, Gallagher Bassett.
14. Larry Adams continued to be employed by SYSCO until March 10, 2004 when he was terminated. He suffered a December 5, 2003 injury *38 to his right ankle unrelated to his Carpal Tunnel Syndrome for which he received some workers' compensation benefits.
The workers' compensation judge denied the exception of prescription. The judge found that Adams developed an occupational disease, carpal tunnel syndrome, during the course and scope of his employment with SYSCO; work restrictions were placed on the claimant on March 23, 2004 for the carpal tunnel syndrome; his last day of work was March 10, 2004; and the claim was filed on April 19, 2004. The court ruled as follows:
The requisite burden of proof has been made to establish that the claim has not prescribed.
* * *
The occupational disease was manifested and diagnosed on October 17, 2003. The claimant found out that the carpal tunnel syndrome was work related from Dr. George on December 11, 2003. The claimant was restricted from working on March 23, 2004. In accordance with Louisiana Revised Statutes 23:1031.1(A)(B)(D)(E); and other pertinent statutes, the claimant's claim has not prescribed.
...
Certainly, the doctors gave various diagnoses concerning claimant's condition, but he was not diagnosed with carpal tunnel syndrome until October 18, 2003, so his claim has been filed timely.
SYSCO sought review by application for supervisory writ to this Court. We denied the application with the following language:
Writ denied. We find no error in the trial court's ruling denying defendant's exception of prescription. Until his carpal tunnel syndrome was diagnosed, claimant had no reason to doubt the prior diagnosis of inflammation/arthritis. Claimant['s] request for medical benefits, made less than three months after the initial diagnosis, was timely.
Adams v. SYSCO Foods of New Orleans, LLC, 05-2 (La.App.2/4/04) (not designated for publication), writ denied, XXXX-XXXX (La.4/29/05), 901 So.2d 1074.
Subsequently Adams amended his complaint to include a shoulder injury with his claim for carpal tunnel syndrome. He alleged the shoulder problem resulted from repetitive lifting. SYSCO filed an exception of prescription as to the shoulder injury claim.

Trial
Trial on the merits took place on May 9, 2007. The parties stipulated that Adams was in the course and scope of his employment with SYSCO at the time his condition was diagnosed as well as when he injured his right ankle, for which benefits were paid, and that his average weekly wage was $955.26. SYSCO contested the occurrence of any accident or developing injury to the claimant's shoulder while he was in the course and scope of his employment. The medical and expense documentary exhibits were admitted into evidence without objection, with the weight to be given them left up to the court. The only witnesses were the claimant, Larry Adams, and the employer's representative, Robert Segrave.
Larry Adams testified he was 31 years old, had completed high school, and had briefly attended a vocational-technical school and a community college. At the time of trial he was working as a police officer for the City of Westwego and had undergone police training for the job. His job history prior to SYSCO included work as a kitchen manager in two different restaurants, as well as a brief stint in the *39 Coast Guard. (He received an honorable discharge for medical reasons, high blood pressure.) He went to work for SYSCO in July 1996 as a fuel man, and became a truck driver six to eight months later.
Adams testified that SYSCO is a food supplier to restaurants, hotels and other businesses. His job required driving from stop to stop, unloading the orders at each stop, and wheeling them into the customer's business. He made 15 to 20 stops per day. The individual boxes weigh 50 to 100 pounds each; he estimated the average load of boxes weighs from 2,000 to 3,000 pounds. To pull out the boxes he often had to reach over his head. On average his route covered more than 200 miles per day.
He injured his ankle on December 5, 2003, when he was exiting the cooler or freezer portion of the truck. He was stepping down, with both hands on the handrails and one foot on the step, when his foot landed on a box that gave in and he twisted his ankle. He saw the company doctor, Dr. Joseph Tamimie, who placed him on light duty. SYSCO gave him a desk job for approximately six weeks. He received temporary total disability wages benefits through February 29, 2004.
SYSCO terminated him on March 10, 2004. He testified the reason given him was that he had resigned. He told them he did not want to resign, but was informed there was no position available for him. Approximately a week later he received a letter indicating he had been fired. After the termination, Adams applied for unemployment compensation benefits and began looking for a job.
With respect to the claim for carpal tunnel syndrome, Adams testified he first sought treatment for pain in his wrist in the beginning of 2003, from Dr. Lisa Hawk. Dr. Hawk referred him to Dr. Eric George, a hand specialist. Dr. George first thought the problem was with the ligaments; subsequently he thought it was arthritis. He treated the claimant with cortisone injections and heat therapy over the course of several months. Adams underwent an EMG test, and on October 17, 2003, Dr. George advised Adams he has carpal tunnel syndrome in both wrists.
On November 7, 2003 Dr. George advised him that surgery would help the condition. Adams notified Bob Segrave at SYSCO, and obtained a letter from the doctor that indicated he had carpal tunnel syndrome that was related to his job. SYSCO never authorized the surgery, however. SYSCO also did not pay his medical bills for the carpal tunnel syndrome treatment.
Adams stated that because of the carpal tunnel syndrome, he cannot perform the job duties of a delivery truck driver, because the constant lifting of boxes and the hand positions required to drive the truck aggravate the carpal tunnel syndrome.
He applied for trucking positions in which he would not have to unload boxes but could just deliver a trailer. He also applied for jobs in restaurants due to his experience in the restaurant business. He was hired at one restaurant, but they could not offer him enough hours to compensate for what he was receiving as unemployment compensation. He drew unemployment compensation benefits from March 11 through September 1, 2004.
Adams applied for a truck-driving job with another company, but after a preemployment physical revealed his carpal tunnel syndrome and the medical limitation that he was not to perform heavy lifting, the company would not hire him because of the restriction.
He worked for a private security company from October 5 through December 10, 2004, as a supervisor. His duties included *40 sitting behind a desk doing dispatching and driving to check on locations where the company had guards posted.
After leaving the security company he was unemployed for a couple of weeks, then went to work for the Westwego Police Department on December 27, 2004. At the time of trial he was still employed as a Westwego police officer. His duties involve no lifting. He drives to patrol the area, stops at businesses and residences, walks the streets to do business checks, and issues traffic citations.
Adams has been treated by Dr. Timothy Finney for his right ankle and shoulder complaints. He received cortisone injections in his ankle and Dr. Finney recommended surgery to remove loose cartilage. He testified SYSCO never approved the surgery, paid for any of the treatment, or reimbursed him for expenses he incurred for treatment of the ankle.
In addition, Adams said he has developed problems with the left ankle due to favoring the right ankle, which causes him to put more pressure on the right side of his body.
Dr. Finney also treated Adams' right shoulder complaints with cortisone injections. The doctor indicated it was a rotator cuff problem from lifting heavy weights down from over his head in his work at SYSCO. Adams testified that SYSCO has never paid for, or reimbursed Adams for, the treatment of the shoulder or any other out-of-pocket expenses such as mileage costs to obtain medical treatment.
Adams testified he underwent a functional capacity evaluation that concluded that he can no longer do the type of work he performed at SYSCO.
On cross examination, after reviewing a medical exhibit Adams admitted he first sought treatment from Dr. George for pain in his wrists in November 2002. He read the medical history notes from November 18, 2002, which stated that the patient (Adams) indicated his pain might be work-related, and that he had had pain in both wrists for about ten months, as well as left elbow pain. He admitted that neither Dr. Hawk nor Dr. George placed him on restrictions due to the wrist problems.
Adams also admitted that he applied to work for the Westwego Police Department in October 2003, a few months before his termination at SYSCO.
The defense witness, Robert Segrave, was Director of Safety, Risk Management, and Facilities for SYSCO. He testified that Larry Adams approached him on December 29, 2003 with the carpal tunnel syndrome issue. Adams told Segrave he had been under treatment with Dr. George on his wrist issue and he believed it might be work-related. Segrave notified the company's third-party workers' compensation administrator, Gallagher Bassett, which reviewed Adams' medical records. Gallagher Bassett determined there was a prescription issue as to the wrist problem.
Segrave contradicted Adams' testimony as to the average weight of the boxes he delivered. According to Segrave, the heaviest boxes usually weighed no more than 80-90 pounds, rarely 100 pounds, and the average case weight is 22½ pounds.
Segrave stated that Adams told him in the fall of 2003 he had an interest in law enforcement and knew some people who worked for the Westwego police force. Adams mentioned a desire to work there, that he had applied there, and would like to leave.
Segrave also testified that Adams never gave anyone at SYSCO any statement of disability as a result of his carpal tunnel syndrome condition, although he did present a disability statement regarding his right ankle. The company paid him indemnity *41 and medical expenses for the ankle injury, and ceased benefits on being notified by his doctor that he had been released. That was handled by Gallagher Bassett.
Segrave said Adams never notified anyone at SYSCO of a problem with his right shoulder. Segrave testified that Adams had been a member of the company Safety Committee for several years and was aware of how workers' compensation matters are handled.
Segrave said that Gallagher Bassett handled all processing of claims and medical payments. All the information was sent to Gallagher Bassett, which would investigate and make many of the decisions for SYSCO. The Gallagher Bassett staff would inform Segrave of their conclusions. Segrave agreed with Gallagher Bassett's determination regarding prescription of the wrist claim.
At conclusion of the trial, the court left the matter open for post-trial memoranda on whether the claimant was entitled to reimbursement of medical expenses and mileage, supplemental earnings benefits ("SEBs"), and penalties and attorney's fees.

OWC Judgment
The OWC court rendered judgment on July 17, 2007. The court found that Adams' carpal tunnel syndrome is related to his work for SYSCO and that Adams is entitled to payment of indemnity benefits, medical expenses, medication expenses, and transportation expenses by SYSCO. The court found the recommended carpal tunnel surgery is reasonable and necessary, and ordered SYSCO to pay for the surgery. The court held that Adams is entitled to temporary total disability benefits from March 1, 2004-March 9, 2004, and to supplemental earnings benefits from March 23, 2004 through the present, and continuing.
The court determined that Adams' average weekly wage was $955.26, and that he is entitled to temporary total disability benefits after his carpal tunnel surgery. The court ordered that SYSCO be given credit for any salary earned, indemnity, and unemployment benefits received or workers' compensation benefits paid from March 23, 2004 through the present, and continuing.
The court ruled that the claim for indemnity benefits for the shoulder injury has prescribed and there is no connectivity to the original injury.
In addition, the court found that SYSCO failed to reasonably controvert the claim, failed to pay workers' compensation benefits to Adams without good cause, and was arbitrary and capricious in failing to pay medical bills, medication expenses, and indemnity benefits, and in failing to authorize the carpal tunnel surgery.
The court awarded Adams multiple penalties and attorneys' fees for SYSCO's refusal to pay, assessed penalties in the amount of $6,000.00, granted attorney's fees in the amount of $8,000.00, and ordered SYSCO to pay interest and costs.

APPEAL
On appeal, SYSCO asserts the trial court erred as follows: (1) in finding Larry Adams entitled to workers' compensation indemnity benefits; (2) in failing to find his claim for carpal tunnel medical treatment has prescribed; (3) in finding carpal tunnel surgery is medically necessary; (4) in finding SYSCO liable for penalties and attorney's fees, and (5) in finding SYSCO liable for the claimant's transportation expenses.
Adams answered the appeal. He seeks modification of the judgment as to the determination that his claim for shoulder injury had prescribed and in its failure to *42 address his claim for treatment of ankle injury. He seeks penalties and attorney's fees as to those claims, as well as additional attorney's fees and costs for this appeal. Adams argues that he proved he suffered a disability as a result of his carpal tunnel syndrome and is entitled to indemnity benefits; that his carpel tunnel syndrome is not prescribed; that carpal tunnel surgery was medically necessary; and that SYSCO did not reasonably controvert Adams' claims and acted arbitrarily.
The applicable standard of review is the manifest error standard:
In a workers' compensation case, as in other cases, the appellate court's review is governed by the manifest error or clearly wrong standard. A court of appeal may not set aside a trial court's or a jury's finding of fact in absence of "manifest error" or unless it is "clearly wrong." The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one, after reviewing the record in its entirety. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. [Citations omitted.]
Freeman v. Poulan/Weed Eater, 93-1530, p. 4 (La.1/14/94), 630 So.2d 733, 737.
"It is well settled in Louisiana jurisprudence that the manifest error standard of appellate review applies in compensation actions even when the evidence before the trier of fact consists solely of written reports, records, and depositions." Fite v. Louisiana Title Co., 2002-2607, p. 3 (La.6/27/03), 852 So.2d 983, 985.

Supplemental Earnings Benefits
SYSCO contends the trial court erred in awarding supplemental earnings benefits to Adams because he "provided no objective medical evidence of any disability and is not entitled to indemnity benefits of any type."
Supplemental earnings benefits (SEBs) are established by La.R.S. 23:1221(3), which states, in pertinent part:
(a) For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis....
Thus, to be entitled to SEBs, the employee must be unable to earn 90% or more of the wages he received at the time of his injury.
The injured employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his or her inability to earn that amount under the facts and circumstances of the individual case. Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1008 (La.1989).
The analysis is necessarily a fact and circumstances one in which the court is mindful of the jurisprudential tenet that worker's compensation law is to be liberally *43 construed in favor of coverage. "In determining if an injured employee has made out a prima facie case of entitlement to supplemental earnings benefits, the trial court may and should take into account all those factors which might bear on an employee's ability to earn a wage." [Citation omitted.]
Daigle, 545 So.2d at 1007.
Once the employee's burden is met, the burden of proof then shifts to the employer, who, if he wishes to contend that the employee is earning less than he is able to earn so as to defeat or reduce supplemental earnings benefits, bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. [Citations omitted.]
Freeman, 93-1530 at 7, 630 So.2d at 739.
While the court may view the circumstances from the perspective of the worker, the claimant's burden of proof is not relaxed. The claimant's testimony alone may be sufficient to satisfy this burden of proof, as long as there is no other evidence that discredits or casts serious doubt upon his version of the incident, and his testimony is corroborated by circumstances following the alleged accident. Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses, or friends. Corroboration may also be provided by medical evidence. [Citations omitted.]
Johnson v. Wal-Mart Stores, Inc., 06-907, pp. 4-5 (La.App. 5 Cir. 2/27/07), 953 So.2d 831, 832-833, writ denied, XXXX-XXXX (La.5/4/07), 956 So.2d 621.
SYSCO argues that Adams chose to go to work as a police officer, earning less than he did at SYSCO. Although he showed he could not return to his former job, SYSCO asserts he has failed to prove a reduction in his earning capacity due to his work accident. SYSCO also argues there is no evidence he suffered a loss of earning capacity due to his wrist condition, because he produced no documentary or testimonial evidence that his treating physicians placed any work restrictions on him as a result of the carpal tunnel condition.
SYSCO further argues that Adams' current job is one he has by choice, not as a result of any disability or loss of earning capacity. He testified at trial that he applied to work at the Westwego police department in the fall of 2003, which was prior to his claim against SYSCO. SYSCO contends that any loss of earning capacity by Adams has been his own choice, not a result of lost physical capacity from a work accident.
Here, Adams proved that he underwent a functional capacity evaluation that determined his limitations were no right-hand carrying or waist-to-crown lifting over 40 pounds, all of which were requirements of his job as a SYSCO driver. It is uncontested that SYSCO failed to rehire him, to provide a job in a modified position, or to offer any vocational rehabilitation services. He also proved he made numerous applications for jobs between March 22, 2004 and September 28, 2004, many of them driving jobs, but he was not hired for any of them. SYSCO failed to rebut these facts.
We find no manifest error in the trial court's determination that Adams is entitled to supplemental earnings benefits.

PrescriptionCarpel Tunnel Syndrome
SYSCO seeks review of the pretrial denial of its exception of prescription as to the carpal tunnel syndrome. As noted above, the OWC judge denied the exception, and writs were denied by both this Court and the supreme court.
*44 Work-related carpal tunnel syndrome is an occupational disease for purposes of workers' compensation. La.R.S. 23:1031.1(B).
All claims for disability arising from an occupational disease are barred unless the employee files a claim as provided in this Chapter within one year of the date that:
(1) The disease manifested itself.
(2) The employee is disabled from working as a result of the disease.
(3) The employee knows or has reasonable grounds to believe that the disease is occupationally related.
La.R.S. 23:1031.1(E).[1]
SYSCO argues that Adams knew by November 18, 2002 that he had a bilateral wrist ailment that he believed to be work-related, that due to Adams' membership on the SYSCO Safety Committee he knew both the procedure and necessity of reporting work-related accidents or conditions, yet he failed to report his condition to SYSCO or file a 1008 claim form for over a year.
SYSCO further contends that Adams' carpal tunnel syndrome claim is governed not by the prescriptive period in La.R.S. 23:1031.1(E), but rather by the prescriptive period of La.R.S. 23:1209(C), which states:
C. All claims for medical benefits payable pursuant to R.S. 23:1203 shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed with the office as provided in this Chapter. Where such payments have been made in any case, this limitation shall not take effect until the expiration of three years from the time of making the last payment of medical benefits.
Both statutes have a one-year prescriptive period, but when La.R.S. 23:1031.1(E) applies, all three circumstances listed in the statute must exist for prescription to toll. SYSCO contends that La.R.S. 23:1209(C) applies because Adams' claim is for medical expenses only, rather than for disability benefits. SYSCO asserts the prescriptive period of La.R.S. 23:1031.1 applies only to claims for disablement, so that a claimant who is not disabled has no cause of action under La.R.S. 23:1031.1.
SYSCO asserts that a claimant who is not disabled, but knows he has contracted an occupational disease, is required to file his claim for medical benefits within the period set forth in La.R.S. 23:1209 rather than that in La.R.S. 23:1031.1. Thus, SYSCO contends, Adams is barred from recovering medical expenses because he was aware he had work-related pain in his wrists from at least November 2002, although it had not been diagnosed as carpal tunnel syndrome, but he did not report any injury to his employer until December 2003, and did not file a formal claim until March 2004.
We find no reason to deviate from this Court's ruling on the writ application in 2004: "Until his carpal tunnel syndrome was diagnosed, claimant had no reason to doubt the prior diagnosis of inflammation/arthritis. Claimant's request for medical benefits, made less than three months after the initial diagnosis, was timely." *45 Adams, 05-2 (La.App.2/4/04) (not designated for publication), writ denied, XXXX-XXXX (La.4/29/05), 901 So.2d 1074.
Accordingly, there is no merit to this assignment.

Medical NecessityCarpal Tunnel Surgery
La.R.S. 23:1203(A) provides that "the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal." SYSCO argues that Adams failed to prove that surgery for the carpel tunnel syndrome is medically necessary.
SYSCO refers to several reports:
(1) In a November 2, 2006 report, Dr. Eric George stated that Adams' nerve studies showed "a moderate bilateral carpal tunnel syndrome. It was recommended, due to persistent numbness and tingling, that he consider a carpal tunnel release.... His symptoms today fall more out of the realm of carpal tunnel syndrome than in the realm of carpal tunnel."
(2) Following a functional capacity evaluation in March 2007, occupational therapist Brian Leingang and physical therapist Jon Mitchell concluded, "This client could perform heavy level work activity. Restrictions including no right hand carry or waist to crown lifting over 40 lbs."
(3) In a May 2, 2007 report, Dr. George stated that nerve conduction studies showed "moderate carpal tunnel, the right greater than the left.... He reports numbness and tingling.... He states that this is something he can live with, as long as he doesn't over do it."
Contrary to SYSCO's argument, we find these statements support the OWC judge's determination that carpal tunnel surgery is "reasonable and necessary." The fact that a claimant can tolerate pain from a work-related condition does not mean that the employer can refuse to provide medical treatment and services that will relieve the pain. Even if the carpal tunnel syndrome is not the sole cause of Adams' pain, it certainly is part of it, and he is entitled to relief from it.
Considering the record in its entirety, we cannot conclude that the OWC judge committed manifest error in finding Adams is entitled to surgery for his carpal tunnel syndrome. This assignment of error is without merit. See Pardee v. Forest Haven Nursing Home, 42, 321, p. 9 (La. App. 2 Cir. 6/20/07), 960 So.2d 1216, 1222.

Transportation Expenses
SYSCO contends that Adams failed to satisfy his burden of proof regarding travel reimbursements. La.R.S. 23:1203(D) provides,
In addition, the employer shall be liable for the actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled by the employee in order to obtain the medical services, medicines, and prosthetic devices, which the employer is required to furnish under this Section, and for the vocational rehabilitation-related mileage traveled by the employee at the direction of the employer. When the employee uses his own vehicle, he shall be reimbursed at the same rate per mile as established by the state of Louisiana for reimbursement of state employees for use of their personal vehicle on state business.
The OWC court awarded mileage reimbursements for travel based on a form Adams submitted at a hearing on the exception of prescription. The form, titled "Mileage Sheet for Visits to Doctors," contained blanks in which Adams listed the dates, the doctors' names, and the miles to and from the doctor, for visits from November *46 18, 2002 to March 21, 2003. SYSCO asserts that the form is irrelevant and insufficient; first, it was not material to the prescription hearing and, second, the form used is deficient according to the standards of workers' compensation law.
We find no merit to this assignment. The travel expense form was accepted into evidence as Plaintiff's Exhibit 11, part of the en globo exhibits offered in evidence by Adams. At the beginning of the trial, the parties stipulated to the exhibits in the plaintiff's exhibit binder.
Defense counsel said, "We agree upon authenticity and so forth and disability. But, as to the interpretation of various medicals and exhibits, we reserve our right to argue over that."
The OWC judge responded, "The documents which have been marked for identification purposes as Exhibits 1 through 32 are admitted into evidence without objection. The Court will determine what weight, if any, is given to any of the documentation that's been presented to the Court. Is that it?" Both counsel agreed.
Under these circumstances, we find no manifest error in the court's determination that Adams is entitled to reimbursement for travel expenses

Penalties and Attorney's Fees
La.R.S. 23:1201(F) provides that failure to provide payment of compensation "shall result in the assessment of a penalty ... for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim." The penalty provision shall not apply, however, "if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control." La.R.S. 23:1201(F)(2).
SYSCO contends it reasonably controverted Adams' claim and did not act arbitrarily. SYSCO argues its initial investigation of Adams' claim revealed a prescription issue, when SYSCO determined that Adams knew of his wrist condition as early as February 2002, yet failed to advise SYSCO of it until December 2003. In addition, SYSCO asserts Adams never produced evidence of any disability related to his claim. SYSCO avers the lack of documentation is sufficient basis for nonpayment of temporary total or supplemental earnings benefits.
As Adams points out, however, SYSCO underpaid Adams during the time he was shifted to a modified position, based on the stipulated average weekly wage and the modified wages paid to him. Further, Adams' temporary total disability benefits were terminated March 1, 2004, ten days before he was fired. In addition, Adams submitted mileage forms for his travel to and from medical appointments.
SYSCO denied benefits and reimbursement based on its contention that Adams' claims had prescribed. Even after the exception of prescription was denied, the denial upheld by this Court on the writ application, and with writs denied by the supreme court, SYSCO still refused to pay Adams any past due benefits, or to reimburse Adams for mileage or medical expenses.
Whether the discontinuance of compensation benefits is without reasonable foundation and, therefore, arbitrary and capricious is a question of fact. Robinson v. Integrated Tank Services, Inc., 96-1080 (La.App. 5 Cir. 5/14/97), 695 So.2d 1009, 1011-1012.
We find no manifest error in the OWC court's determination that SYSCO is subject to penalties and attorney's fees.

*47 ANSWER TO APPEAL
La.C.C.P. art. 2133(A) provides,
An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer.
In its reply brief, SYSCO asserts that Adams is barred procedurally from seeking to affirmatively modify the trial court's judgment because he "neither filed his own appeal nor answered SYSCO's appeal." SYSCO is mistaken. Adams filed an answer to the appeal in this Court on November 30, 2007, ten days after the record was lodged. His answer to the appeal was timely; hence, we may address the assignments of error Adams raises in this Court.

PrescriptionShoulder Injury Claim
Adams asserts that his claim for his shoulder injury relates back to the filing of his original claim, because the injury arises out of the same repetitive lifting that caused his carpal tunnel syndrome.[2]
Adams amended his claim for compensation on July 28, 2005 to allege that due to the repetitive lifting required while in the employ of SYSCO, he suffered injury to his shoulder. The OWC court found the claim for the shoulder injury had prescribed.
Adams contends that the amendment relates back to March 22, 2004, the filing date of his claim for compensation for carpal tunnel syndrome. He asserts SYSCO was on notice that he was claiming injury to his upper extremities caused by his job duties, due to an October 2003 report in which Dr. George noted that much of Adams' symptomatology was "more in the shoulder, with some crepitus in the wrist. I am unsure as to how much is carpel tunnel related and how much is other etiology."
In a report dated May 24, 2004, Dr. Finney stated that Adams was reporting a new condition in his right shoulder. On July 26, 2004, Dr. Finney reported that Adams had right shoulder rotator cuff impingement and bursitis. The doctor said, "I certainly feel that the repetitive lifting while working contributed to his present condition."
As stated above, Adams did not amend his claim for compensation until July 28, 2005. Unlike the carpal tunnel syndrome the shoulder injury is not an occupational injury. Therefore, it is governed by the provisions of La.R.S. 23:1209(A) relating to developing injuries: "[W]hen the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops...."
In Winford v. Conerly Corp., XXXX-XXXX (La.3/11/05), 897 So.2d 560, 565, our supreme court ruled that a developing injury does not manifest into a disability until the employee is either forced to discontinue working due to the injury or the employee *48 receives a medical diagnosis which determines that he or she is disabled. In this case, Adams has not shown that he discontinued working due to the shoulder injury nor that he has received a diagnosis of disability due to the shoulder injury.
The claimant's burden of proof in establishing a causal relationship between a job-related accident and the disability is by a preponderance of the evidence. Baker v. TMSEL, 07-227, p. 5 (La.App. 5 Cir. 10/16/07), 970 So.2d 1094, 1097.
The plaintiff failed to carry his burden of proving that the shoulder injury was related to the development of his carpal tunnel syndrome. We find no error in the trial court's conclusion that the shoulder claim prescribed.

Ankle Injury Claim
Adams contends he is entitled to treatment and reimbursement of expenses incurred with Dr. Timothy Finney, who treated him after his original orthopedic surgeon of choice, Dr. F. Allen Johnston, had discharged him regarding his ankle injury. Further, he asserts that Dr. Finney has found that Adams needs further medical treatment for his ankle injury and for his shoulder injury.
In a letter to Gallagher Bassett dated March 3, 2004 Dr. F. Allen Johnston, the physician treating Adams for the ankle injury, advised that the results of a right ankle MRI were "basically normal," but that a bone scan was not normal. The bone scan showed "significantly diminished blood flow" and raised the possibility of vascular insufficiency. Dr. Johnston was uncertain whether the vascular condition was related to the accident in question, and "would rather leave that for a vascular surgeon to determine."[3] From an orthopedic standpoint, however, the doctor stated, "his ankle condition is improved to the point where he could return to work." In his notes in the medical record, Dr. Johnston commented that Adams' ankle had reached "MMI [maximum medical improvement]."
Adams was first seen by Dr. Finney for his ankle complaints on March 25, 2004. Dr. Finney's impression was, "Status post right ankle sprain now with tibiotalor joint synovitis." Dr. Finney treated him over the next several months for his ankle complaints. None of Dr. Finney's notes, however, relate the ankle problem to Adams' work-related accident.
The judgment made no mention of Adams' ankle injury claim. Where a judgment is silent as to any part of a demand or any issue that was litigated, that demand is deemed rejected. Southern Marine Sales, Inc. v. Matherne, 05-181, p. 8 (La.App. 5 Cir. 11/29/05), 915 So.2d 1042, 1047, writ denied, XXXX-XXXX (La.4/24/06), 926 So.2d 545.
We find no manifest error in the OWC court's rejection of the ankle injury claim.

Penalties and Attorney's Fees
Adams also asserts that SYSCO is liable for attorney's fees and penalties for arbitrarily and capriciously refusing to pay for Adams' shoulder treatment and Adams' ankle treatment by Dr. Timothy Finney, and that his counsel is entitled to additional attorney's fees for work on this appeal.
Because we have upheld the OWC court's rejection of Adams' shoulder and ankle claims, we do not award additional attorney's fees and penalties for those.
*49 Because the OWC court awarded Adams attorney's fees on his claim for the carpal tunnel syndrome, however, and Adams' answer to the appeal requests an increase in those attorney's fees for work on this appeal, we amend the judgment to award additional attorney's fees in the amount of $1,000.00 for this appeal.

DECREE
For the foregoing reasons, the judgment is amended to grant the plaintiff, Larry Adams, attorney's fees for the appeal, in the amount of $1,000.00. As amended, the judgment is affirmed.
AMENDED AND AFFIRMED.
NOTES
[1] "[T]he ... prescriptive period does not begin to run until the point at which the disease has manifested itself, the employee has become disabled from working as a result of the disease, and the employee knows or has reasonable grounds to believe the disease is occupationally related." Bynum v. Capital City Press, Inc., 95-1395, pp. 5-6 (La.7/2/96), 676 So.2d 582, 586.
[2] "When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading." La. C.C.P. art. 1153.
[3] Additional medical reports from Dr. Finney indicate a peripheral vascular evaluation by another doctor found no evidence of any significant arterial or venous problem in his right lower extremity.