MARION F. EDWARDS, Chief Judge.
1 ?PIaintiff/appelIant, John Orr (“Mr. Orr”), appeals a judgment of the trial court in which it ruled in favor of the defendants/appellees, Mr. and Mrs. Clarence E. Jones Jr., Sue Haynie, Lynn Gau-threaux, and their broker, Prudential Gardner Realtors (“Prudential”), thereby dismissing Mr. Orr’s claims of redhibition, fraud, and conspiracy against the sellers and realtors for failure to disclose a cracked slab in immovable property purchased by Mr. Orr. We affirm.
The original petition in this matter was filed on August 8, 2006. Trial began before Judge Cornelius Regan on January 29, 2010, April 12, 2010, and May 27 and 28, 2010. The trial was still not completed and was re-set to continue on August 27, 2010. Another day still was needed to complete the trial that was concluded on September 8, 2010. Defense counsel moved for a mistrial that was granted on January 25, 2011, and Judge Regan re-cused himself on his own motion.
The case was randomly re-alloted. A new trial was conducted on July 11, 12, and 13, 2011. On August 2, 2011, the trial court rendered judgment, dismissing all of Mr. Orr’s actions against all defendants, after finding that Mr. Orr “did not sufficiently or adequately meet his burden in proving that Defendants defrauded and/or conspired to defraud him” and that “the Defendants were bad faith sellers.” It is this judgment that is before us on appeal.

\ ¿FACTS

After he lost everything in Hurricane Katrina, Mr. Orr was living in River Ridge with his girlfriend’s parents. Because the living arrangements were cramped and *585 less than ideal, Mr. Orr decided to purchase a home of his own. He saw a sign on a house that he liked at 471 Gordon Avenue in Harahan and made an appointment with Lynne Gauthreaux, an agent with Prudential Gardner Realtors who had the listing, to see the home. Because Mr. Orr did not have a realtor, he signed a Disclosure and Consent to Dual Agency agreeing to be represented by the sellers’ agent, Lynn Gauthreaux.
Mr. Orr made an offer on the house that was accepted by the sellers. At the time of the purchase, Lynn Gauthreaux gave Mr. Orr a Property Disclosure Document that indicated there were no defects regarding the foundation of the home. The document was signed by the sellers (Mr. and Mrs. Clarence Jones), Mr. Orr, Lynn Gauthreaux, and Sue Haynie, who is also a realtor with Prudential.
Testimony and documentary evidence at the second trial shows that the home Mr. Orr purchased was about fifty years old. In 1991, Robert Anderson, a structural engineer, conducted an inspection of the property and found a “crack running through the center of the slab.” At that time, Mr. Anderson “did not feel that this is a major problem which is unable to be solved.” He recommended the crack be sealed by the injection of epoxy and indicated that he “would expect the slab to have more strength at the location of this discontinuity than any place else in the slab.” Mr. Anderson estimated that the crack was there since the slab was poured about fifty years ago, and stated that, upon repair, he “would not anticipate any further difficulties with the slab as being probable in consideration of its age.” Attached to the report is a sketch that shows a crack across the slab. The record also contains a contract between the owners of the home at that time and Southern 14 Coating & Waterproofing, Incorporated, dated June 5, 1991, for the repairs recommended by Mr. Anderson. Testimony of the realtor shows that a cancelled check proving the contract was completed was also included with the contract, although that document was not offered into evidence in this trial.
Mr. and Mrs. Jones purchased the home in 2003 and were made aware of the cracked slab and the repairs. At that time, the Joneses hired Mr. Chris Savoie to conduct an inspection on the home that noted the crack in the slab. However, that document is not in evidence, and Mr. Sa-voie did not testify at trial. Lynn Gau-threaux, who represented the Joneses when they purchased the home in 2003, testified that she spoke with Mr. Savoie, and he indicated that the crack was not a serious problem and just needed to be sealed at the edges of the slab to prevent termite invasion. The suggested repair was done, and the edges of the crack were sealed with an overlay of concrete. Based on this inspection and the belief that the slab was repaired, the Joneses purchased the home.
While the Joneses lived in the home, they decided to replace the flooring and, during that process, the slab was exposed. At that time, they observed that the crack in the slab was repaired as represented when they purchased the home. Accordingly, they put new padding and carpet down over the repaired slab. When the Joneses decided to put the home on the market in 2005, they did not indicate in the disclosure statement that there was a problem with the slab because they believed the problem to be fixed.
Before the act of sale, Mr. Orr hired and inspector to examine the home. The inspector found some mold behind the sink but found no problems with the slab or foundation. Mr. Orr was present during the inspection and admits that he personal *586 ly inspected the perimeter of the house and saw no cracks in the slab.
|fiShortly after moving into the home, Mr. Orr began renovations to the home. When he knocked down a wall and pulled up the flooring, he discovered a crack in the slab. Photos introduced into testimony show cracks in the foundation that appear to have been repaired and cracks that are still remaining. The photos also show a crack in the foundation easily visible on the outside of the home. However, Mr. Orr testified that these outside cracks were not visible originally because a layer of cement “rub” was covering them.
Mr. Orr and his family moved into a new home in 2008 and rented the house to another family for $1,300 per month. Mr. Orr testified that his expenses were about $13,000 to $15,000 from the time of purchase to the time of trial. That amount included grass cutting, plumbing, electrical, and air-conditioning repairs. Mr. Orr presented no receipts for any of these expenses, and he could not state exact amounts paid for individual expense items. Mr. Orr testified that none of these expenses related to the cracked slab except the plumbing repair. Although Mr. Orr opined that the plumbing problems were caused by the cracked slab, he did not offer any professional opinion regarding the issue.
After the bench trial, the trial court took the matter under advisement and, ultimately, it rendered judgment in favor of the Joneses, Sue Haynie, Lynn Gau-threaux, and Prudential. It is clear from the reasons incorporated into the judgment that the trial court found that Mr. Orr “did not sufficiently or adequately meet his burden” in proving fraud, conspiracy, or that the Joneses were bad faith sellers.

LAW AND ANALYSIS

Mr. Orr stated causes of action against the Joneses in redhibition, and against Sue Haynie, Lynn Gauthreaux, and Prudential in fraud and conspiracy. Specifically, in his original petition, Mr. Orr made claims that the realtors ^committed fraud and also conspired with the Joneses to deceive him by failing to disclose a known and material defect (the cracked slab). Mr. Orr asserts that all defendants were in bad faith and that the failure to disclose the defect was calculated to mislead and misinform him.
In brief to this Court, Mr. Orr assigns nine errors for our review in which he challenges the factual findings and the legal conclusions made by the trial court in dismissing all of his causes of action against all defendants. All but one of those relate to the factual findings that the realtors did not defraud Mr. Orr and the Joneses were good faith sellers.
A realtor has a duty to relay accurate information about property, a duty which extends to both vendor and purchaser, and may be held liable if such duty is breached.[1] That duty includes the duty to disclose to a buyer a known material defect regarding the condition of real estate of which a broker, salesperson, or timeshare interest salesperson has knowledge.[2] A breach of that legal duty to supply correct information, resulting in damage to a plaintiff caused by a breach may allow a plaintiff to assert a cause of *587 action for negligent misrepresentation.[3] However, fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.[4] To prove fraud, the party making the allegation must prove that intent to defraud exists and that the defrauding party deliberately seeks to gain an unjust advantage or to cause loss or inconvenience to the other.[5]
Considering the facts of this case, we find no abuse of the trial court’s ruling that Mr. Orr did not prove his cause of action in either negligence or fraud against |7Sue Haynie, Lynn Gauthreaux, and Prudential. The testimony shows that the realtors believed the slab to be repaired at the time of the disclosure to Mr. Orr and had no intent to mislead or defraud him.
Documentary evidence supports the testimonial evidence offered by the defendants. The record shows that a structural report done in 1991 revealed that the home had a cracked slab that could be repaired with epoxy. There is also a contract for the repair signed by the owners of the home at that time, and testimony shows that a cancelled check was given the Joneses when they purchased the home. Further, testimony of the Joneses and Lynn Gauthreaux shows that a second inspection was done on the home in 2003 when the Joneses purchased it. At that time, the inspector recommended that the edges of the crack be sealed to prevent termite damage. That repair was done when the Joneses purchased the home.
For the same reasons, we find the trial court did not abuse its discretion in finding the Joneses were good faith sellers. There is nothing in the record, other than allegations of Mr. Orr, to show that the Joneses had any knowledge that the slab was not repaired.
In his final assignment, Mr. Orr argues, in the alternative, that, even assuming there was no fraud or bad faith, the trial court erred in not ruling on his action in redhibition pursuant to La. C.C. arts. 2520 et seq. In response, defendants argue Mr. Orr only stated causes of action in fraud and bad faith redhibition making the finding whether the cracked slab is a redhibitory defect unnecessary. We disagree.
In the original petition, Mr. Orr asserts that the Joneses are in violation of the redhibition articles. We also find that a careful reading of the judgment substantiates Mr. Orr’s claim that the trial court never decided whether the cracked slab was a redhibitory defect, or whether Mr. Orr proved his claim in redhibition. | sIt is presumed that when a judgment is silent as to a claim made by a plaintiff, it is denied.[6] Accordingly, we will consider that issue.
Mr. Orr asserts the cracked slab is a redhibitory defect for which he should be compensated either with return or reduction of the purchase price or other damages.
La. C.C. art. 2520 defines defects that are redhibitory as follows:
A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the *588 thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.
That article also states that a “seller warrants the buyer against redhibitory defects, or vices, in the thing sold.”[7] It is inherent in a redhibitory vice that it be latent and must have existed at time of sale.[8]
Before a plaintiff can bring an action in redhibition, he must allege one of the basic elements of the action, that is, that the house is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that, judged by the reasonable person standard, had he known of the defect, he would never have purchased it.[9] Upon review of the record, we do not find that Mr. Orr met that burden of proof on his action in redhibition.
His testimony was that he purchased the home in 2005 and discovered the cracked slab shortly afterward when he was renovating. He completed the renovations without doing any repairs on the slab. He and his family lived in the |9house until October 2008, and, after a few months, they rented the home to another family for $1,300 a month. At the time of trial, in 2011, the home was still rented out. We do not find this meets the requirements of La. C.C. art. 2520. Accordingly, we do not find the trial court erred in dismissing all of Mr. Orr’s claims against all defendants.
For the foregoing reasons, we affirm the judgment of the trial court.

AFFIRMED

. La. R.S. 37:1455; Cousins v. Realty Ventures, Inc., 01-1223 (La.App. 5 Cir. 1/14/03), 844 So.2d 860, writ denied, 03-1583 (La. 10/3/03), 855 So.2d 316, writ denied, 03-1584 (La. 10/3/03), 855 So.2d 317.

. La. R.S. 37:1455(A)(27).

. Smith v. Remodeling Serv., Inc., 94-589 (La. App. 5 Cir. 12/14/94), 648 So.2d 995.

. La. C.C. art. 1953.

. Color Stone Inti., Inc. v. Last Chance CDP, LLC, 08-35 (La.App. 5 Cir. 5/27/08), 986 So.2d 707.

. Adams v. Sysco Food Serv. of New Orleans, 07-935 (La.App. 5 Cir. 6/30/08), 990 So.2d 34.

. La. C.C. art. 2520.

. Id.

. Encalade v. Coast Quality Const. Corp., 00-925 (La.App. 5 Cir. 10/31/00), 772 So.2d 244, writ denied, 00-3229 (La.1/26/01), 782 So.2d 634.